**FILED**

2011 JUN 15 P 3: 52

U.S. DISTRICT COURT
EASTERN DIST. TENN.

BY_____DEPT. CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TENNESSEE
#### AT CHATTANOOGA

DMITRIY A. DIMOV,                    )
                                     )
    Plaintiff,               )
                                     )
v.                                   )     Case No.: 1:11-cv-160
                                     )
EMC MORTGAGE CORPORATION;            )
1ST MARINER BANK;                    )
MORTGAGE ELECTRONIC                  )
REGISTRATION SYSTEMS, INC.;          )
WILSON & ASSOCIATES, P.L.L.C.;       )
SHELLIE WALLACE, an individual;      )
TERSA PETTYPOOL, an individual;      )
and DOES 1-20,                       )
                                     )
    Defendants.              )

---

## COMPLAINT

---

Plaintiff, DMITRIY A. DIMOV, *Pro-Se*, and as and for his Complaint against Defendants EMC MORTGAGE CORPORATION, 1ST MARINER BANK, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WILSON & ASSOCIATES, P.L.L.C., SHELLIE WALLACE, TERSA PETTYPOOL and DOES 1-20, pleads as follows:

### NATURE OF ACTION

1.     This action seeks to recover hundreds of thousands of dollars the Defendants have obtained by, through from or because of Plaintiff Dimov directly or indirectly by submitting, and causing to be submitted, fraudulent charges for payments and fraudulent documents relied on to foreclose Plaintiff real property.  In addition, Plaintiff Dimov seeks a declaratory judgment that the letters, invoice/statements, Appointment of Substitution Trustee, Trustee Deed  and other related documents referred to in this matter are all fraudulent and/or deemed null and void.

2.     As discussed below, defendants at all times relevant have known that (a) Plaintiff's Note was paid in full and no payment was due; (b) EMC was not authorized to collect payments and keep said payments; (c) Plaintiff's property was not secured by the Deed of Trust because it was separated from the Note; (d) the documents submitted by defendants are fraudulent, false and misleading in several material respects. In fact, the sole purpose for the issuance of these documents was to financially enrich the defendants.

3.     The defendants' scheme began as early as December 7, 2005 at the signing of the Note and Deed of Trust and has continued uninterrupted since that time. As a result of their scheme, Plaintiff Dimov has incurred damages of more than $175,000.

## PARTIES

4.     Plaintiff Dmitriy A. Dimov (hereinafter "Plaintiff" and/or "Dimov")  is an individual and resident of the State of Tennessee located at 131 Luke Rd NE, Cleveland, TN 37323.

5.     Defendant EMC Mortgage Corporation (hereinafter "EMC") is a foreign corporation with its principal place of business located at 2780 Lake Vista Drive, Lewisville, TX 75067. EMC engages in substantial real property mortgage related business in the State of Tennessee.

6.     Defendant 1st Mariner Bank (hereinafter "1st Mariner") is a Maryland banking corporation with its principal place of business located at 1501 S. Clinton St. 16th FL, Baltimore, MD 21224. 1st Mariner is a National Banking Association and engages in substantial financial related business in the State of Tennessee.

7.     Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") is a foreign corporation with its principal place of business located at 1818 Library Street, Suite

300, Reston VA 20190. MERS engages in substantial real property mortgage related business in the State of Tennessee.

8. Defendant Wilson & Associates, P.L.L.C. (hereinafter "W&A") is a foreign is a foreign corporation with its principal place of business located at 1521 Merrill Drive, Suite D-220, Little Rock, AR 72211, but also maintains an address located at 9050 Executive Park Drive, Suite 115-C, Knoxville, TN 37923. W&A engages in substantial real property, mortgage and trustee related business in the State of Tennessee.

9. Defendant Shellie Wallace (hereinafter "Wallace") is an individual located at the offices of Wilson & Associates, P.L.L.C. located at 1521 Merrill Drive, Suite D-220, Little Rock, AR 72211. Wallace engages in substantial real property, mortgage and trustee related business in the State of Tennessee.

10. Defendant Tersa Pettypool (hereinafter "Pettypool") is an individual located at the offices of Wilson & Associates, P.L.L.C. located at 1521 Merrill Drive, Suite D-220, Little Rock, AR 72211. Pettypool engages in substantial real property, mortgage and trustee related business in the State of Tennessee.

11. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-20, inclusive. Plaintiff therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants are in some manner involved and/or responsible for the cloud on Plaintiffs property, injuries and damage(s) sustained by Plaintiff, as alleged herein.

12. At all times mentioned, each Defendant, including, but not limited to Defendants DOES 1 through 20, inclusive, and each of them, were, and each was, an agent, associate and/or

Case 1:11-cv-00160-CLC-WBC   Document 1   Filed 06/15/11   Page 3 of 22   PageID #: 61

employee, acting with the permission, consent and/or in the aid or assistance of one or more of the other above-named Defendants and each of them at all times herein mentioned, was acting within the course and scope of his/her/their agency and/or employment of said Defendant.

## JURSIDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and there is diversity between the parties pursuant to 28 U.S.C. § 1332(c).

14.     Venue in this district is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

15.     The defendants herein are subject to personal jurisdiction in this district.

## STATEMENT OF FACTS

### Defendants 1st Mariner & MERS

16.     On or about December 7, 2005, Plaintiff acquired property located at 131 Luke Road NE, Cleveland, TN 37323 and entered into a certain agreement with Defendant 1st Mariner known as a "MERS" Adjustable Rate Note (hereinafter "Note") and "MERS" Deed of Trust (hereinafter DOT) in the amount of $171,000.00. A "MERS" Note and DOT refers to a document where Defendant MERS is involved and is easily identifiable by the presence of a MINS Number located on the document. On the Note and DOT, the subject of this action, the MINS Number is identified as 100212504000219702. See Exhibits "A" & "B" attached hereto.

17.     Both the Note and DOT identified Defendant 1st Mariner as the "Lender" however, the DOT identified Defendant MERS as both the "nominee for Lender" and the "beneficiary under the Security Instrument" (see Ex. B para. (E)). At no time is Defendant MERS mentioned on the Note.

18.    At all times relevant and hereto, Plaintiff believed Defendant 1st Mariner was lending Plaintiff its own money and was not aware nor agreed to any silent parties to the Note or Deed of Trust or maintain an interest in such not specifically identified and mentioned in the Note and DOT.

19.    Section 3(A) of the Note specifically stated the Plaintiff will "make monthly payments on the 1st day of each month beginning on February 1, 2006" and would make such monthly payments to an address located at "3301 Boston Street, Baltimore, Maryland 21224."

20.    Upon information and belief, and in reliance thereon Plaintiff states Defendant 1st Mariner never lent its own money and at all times material to what Plaintiff believed to be an arms length transaction, was nothing more than a straw man for an undisclosed party portraying itself to be the "Lender" lending its money.  This was a material misrepresentation and a fraud.

21.    Upon information and belief, and in reliance thereon Plaintiff states that immediately after closing, the Note was paid in full, converted into a security instrument and was traded to an investor(s) for consideration in an amount in excess of the lien claim.

22.    Upon information and belief, and in reliance thereon Plaintiff states the subject debt of the property has been paid in full by third party funds and no satisfaction of the debt has been filed by Defendant 1st Mariner or Defendant MERS in County Public Records.

23.    At all times herein, the Note and Mortgage filed by Defendant 1st Mariner in county records was bifurcated at the time of closing allowing one party to own the Note for a fee while simultaneously allowing another party to own the Deed of Trust for a fee rendering said mortgage an unsecured and voided lien. *See Carpenter v. Longan*, 83 U.S. 271, 274 (1872).

## Defendant EMC Mortgage Corporation

24.     On or about January 2006, Plaintiff received a letter from Defendant EMC claiming all payments are to be made directly to Defendant EMC via mail or through its online portal located at www.emcmortgageservicing.com.  Through registration, Plaintiff obtained a Username and Password that allowed Plaintiff to log in, enter his banking information which would in turn deduct funds from his bank account via electronic transmission across state lines into the banking accounts of Defendant EMC.  From about January 2006 through July 2009, Defendant EMC would issue Plaintiff an invoice/statement of an amount due and owing of approximately $1,264.00 for the month over 41 times via United States Postal Mail Services. This amount was different from the amount agreed upon in the Note of $1,123.35, a difference of approximately $141.00 each month.  Thus, Plaintiff paid Defendant EMC who was unjustly enriched by its fraudulent scheme, approximately $51,824.00.

25.     Defendant EMC was never mentioned on the Note or DOT and Plaintiff never received any notice from Defendant 1st Mariner stating all payments should be made to Defendant EMC. However, because of the letters sent via U.S. Mail and the Invoice/Statements sent by Defendant EMC, Plaintiff relied on the representations made by EMC and made payments directly to EMC.

26.     Upon information and belief, and in reliance thereon Plaintiff states that Defendant EMC materially misrepresented the nature of its authority to receive payments, the length of time it received payments from the Plaintiff and the documents submitted by Defendant EMC in support of the false charges alleged to be due and owing.  Defendant EMC's invoices/statements were false, materially misleading and fraudulent.  Plaintiff contends that the sole purpose of Defendant EMC's invoices/statements was to generate fees and revenue with the

intent to sustain economic gain and enrichment for defendants and their co-conspirators. Defendant EMC was not authorized to receive payments under and/or on behalf of the Note and DOT.

27.    Upon information and belief, and in reliance thereon Plaintiff states that Defendant EMC never applied and of Plaintiff's payments to the subject Note and kept all payments for itself and defendants.

28.    In support of its claims, Plaintiff avers that Defendant EMC submitted false and materially misleading statements set forth in "letters" and "invoices/statements" of amounts due and owing bearing Defendant's logo and mailing address. These letters, invoices/statements are false and misleading because they erroneously assert that the Plaintiff owed Defendant EMC an amount of money that was in fact never owned to Defendant EMC and if not paid, Plaintiff would be severely damaged suffering loss of his property, credit and other financial standing.

29.    Plaintiff asserts that he justifiably relied on the false and materially misleading statements set forth in "letters" and "invoices/statements" of amounts due and owing. Plaintiff contends that the facially valid documents bearing Defendant EMC's logo and at times signed by representatives of Defendant EMC and ultimately submitted to Plaintiff via U.S. Mail, along with the false statements contained within, caused Plaintiff to rely on them.

30.    Plaintiff states that Defendant EMC between January 2006 and September 2009, sent approximately well over 50 letters and invoices/statements containing false and materially misleading statements of amounts due and owing always knowing that it was not lawfully entitled to such payments.

31.    Upon information and belief, and in reliance thereon Plaintiff states Defendant EMC's actions are a part of its business practice and is deceptive in nature. Defendant EMC at

all times knew and omitted that a) the subject Note was paid in full by third party funds and b) the Note and/or DOT was extinguished and or voided and c) Defendant EMC was receiving payments without authority to receive such.

## Defendants EMC, MERS, W&A, Wallace & Pettypool Unlawfully Sell Plaintiff's Property Via Non-Judicial Foreclosure

32. On or about May 17, 2007, Defendant MERS allowed and caused to be filed an Appointment of Substitute Trustee (hereinafter "the Substitution Document") containing false and materially misleading statements in an attempt to name a Trustee "in the place and stead" of EquiTitle who was never the Trustee on the Note and/or DOT. See Exhibit "C" attached hereto.

33. In specific, the Substitution Document stated Plaintiff "executed a Deed of Trust dated December 7, 2005 in favor of EquiTitle, Inc. as Trustee for the owner and holder of certain indebtedness to 1st Mariner Bank-WHSL" (See Ex. C). This was not a true statement and was materially misleading as the DOT under section (D) titled "Trustee" is blank and does not mention EquiTitle anywhere on the Note or DOT.

34. In addition, the Substitution Document also states that Defendant MERS is the "owner and holder of said indebtedness " (See Ex. C). This too was not a true statement and was materially misleading as MERS was never the Owner or Holder of the Note or DOT. MERS does not EVER maintain physical possession of the Note or Mortgage/DOT and functions only as an electronic tracking system of the Note and Mortgage/DOT.

35. The Substitution Document was signed by Liquenda Allotey, a well known "Robo-Signer" of Lender Processing Solutions "LPS" as an alleged VP of Defendant MERS who is not an employee of, nor has ever been an employee of, Defendant MERS. Defendant MERS does not maintain an office located in Dakota County Minnesota where the document was

allegedly The documents design was specifically intended to grant and convey rights and authority to foreclose on the Plaintiff property unlawfully without proper authority to do such.

36.     Because of the documents false and materially misleading statements, the document is void. In addition, the Note and DOT was bifurcated at the time of closing allowing one party to own the Note for a fee while simultaneously allowing another party to own the DOT for a fee rendering said mortgage an unsecured and voided lien. In *Re: Agard* (Bankr. Ct, EDNY 2011), MERS admits that the very foundation of its business model as described herein requires that the Note and Mortgage travel on divergent paths (pg. 23).

37.     On or about July 17, 2009, Defendant EMC, in clear contradiction to the 2007 Appointment of Substitute Trustee (hereinafter "Trustee Document") and it furtherance of its fraudulent acts, filed in public records an Appointment of Successor Trustee containing false and materially misleading claiming Plaintiff executed a DOT in favor of EquiTitle, Inc. as Trustee for Defendant MERS as a separate corporation acting solely as nominee for Defendant 1st Mariner. These false and materially misleading statements were fraudulent. See Exhibit "D" attached hereto.

38.     In specific, the Trustee Document dated July 17, 2009 names Defendant Wallace as Trustee and Defendant Pettypool as Co-Trustee who released **3 weeks prior,** a letter on June 25, 2009 to Plaintiff signed by Defendant Wallace *before* they were even named Trustee and Co-Trustee, on Defendant W&A's letterhead even though W&A had **NEVER** not been named a Trustee. See Exhibit "E" attached hereto.

39.     The letter from Defendant Wallace indicated Plaintiff had 30 days to dispute the validity of the debt and confirm the debt as being disputed.

40.     Immediately after the June 25, 2009 letter, on June 30, 2009, five (5) days later, Plaintiff received another letter from Defendant Wallace on Defendant W&A's letterhead enclosing a Notice of Trustee Sale bearing the same date. See Exhibit "F" attached hereto.

41.     As a result of the June 25, 2009 letter indicating Plaintiff had 30 days to dispute the validity of the debt and confirm the debt as being disputed, Plaintiff sent his response on July 20, 2009 directly to Defendant Wallace and Defendant W&A to (a) dispute the validity of the debt; (b) verification of the debt; (c) production of the original note the Deed of Trust relied upon. See Exhibit "G" attached hereto.

42.     On July 23, 2009, three (3) days later, Defendant Pettypool responded to Plaintiff's request acknowledging receipt of his correspondence but failing to provide verification of the debt, validation of the debt or establishing a time for Plaintiff to inspect the original note. *See Exhibit "G1*

43.     Indeed Plaintiff had responded to the debt collection letter well within 30 days however Defendants Wallace, Pettypool and W&A acting on Defendant EMC's behalf, failed to respond to Plaintiff's July 20, 2009 request for verification and validation of the debt and on July 27, 2009, cause the property to be sold Bank of New York Mellon.

44.     Several fraudulent, false and material misrepresentations are immediately brought to the forefront from Defendant's Wallace, Pettypool and W&A's letter and Notice of Trustee Sale. First, as previously noted, how can Defendant W&A act as Trustee and file a Notice of Trustee Sale when the alleged Appointment of Substitution Trustee document filed named Defendant Wallace and Defendant Pettypool individually and made no mention of Defendant W&A as Trustee (Ex. D)?

45.     Second, even arguing arguendo Defendant W&A was acting through or on behalf of Defendants Wallace, Pettypools or EMC's behalf, how could a Notice of Trustee Sale be

issued on June 30, 2009 when the Appointment of Substitution Trustee document was not signed and notarized until July 7, 2009, eight (8) days later? Clearly this was a fraud.

46.     Third, the Appointment of Substitution Trustee document was signed by Defendant EMC "as attorney in fact for the Bank of New York Mellon, the party Plaintiff's house was allegedly sold to on July 27, 2009 evidenced by the filing of a Trustee's Deed. See Exhibit "H" attached hereto.

47.     How can the Bank of New York Mellon already own Plaintiff's property and Appoint a Substitution Trustee on July 7, 2009 via a Notice of Sale generated eight (8) days prior on June 30, 2009 by Defendant W&A who had no authority whatsoever to sell the property to itself (Bank of New York Mellon) on July 27, 2009? Clearly this was a fraud.

48.     Both Appointments of Trustee's (Ex. C & D) were created and notarized in Dakota County Minnesota where none of the Defendants have offices or reside and are the operative documents that played a significant part and allowed for Plaintiff's property to be sold. In fact, because of the signature of Liquenda Allotey a well known "Robo-Signer" of Lender Processing Solutions "LPS" as an alleged VP of Defendant MERS who is not an employee of, nor has ever been an employee of, Defendant MERS, is how Plaintiff and this Court is made aware that LPS, a known document mill is involved. This is fraud run amuck and Defendants have made the mistake of shedding light on their fraudulent activities which have resulted in Plaintiff losing his home and suffering massive economic damage.

49.     Plaintiff contends that it is the business practice of all the Defendants to engage in these types of fraudulent, false and materially misleading acts to enrich themselves at the injury of Plaintiff and others like Plaintiff and as a result, Defendants will likely continue in these fraudulent business practice activities.

50. As a result of the fraudulent activities of Defendants, Plaintiff was issued a 1099-A showing a balanced owed of $165,272.89 and a fraudulent and overly exaggerated fair market value of the property to boost Defendant EMC's financials in the amount of $17,500,112.00 and is unjustly enrich by such.

51. Plaintiff has in essence been robbed of his money and property by the Defendants aiding and abetting each other in concert. Such acts are not only criminal, immoral and sophisticated in nature, they are demoralizing to the public's interest which it is Plaintiff's hope this Honorable Court will protect.

## FIRST CAUSE OF ACTION
### (Against All Defendants Under 28 U.S.C. § 2201)

52. Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations.

53. There is an actual case and controversy between Plaintiff Dimov and Defendants 1st Mariner and EMC as to all the amounts charge to Plaintiff not consistent with the Note that have been paid. Plaintiff contends that Defendant 1st Mariner knew it was not providing the actual funds to the arms length transaction with Plaintiff and thus was not in fact the "lender" and failed to disclose the true party who would have a real beneficial interest hidden and maintained by Defendant MERS.

54. Plaintiff contends that immediately after the closing, the amount due on the Note was paid in full to the party that actually funded the loan by an undisclosed third party(ies) without a Satisfaction of the Deed of Trust ever being filed by Defendants 1st Mariner or MERS.

55. Plaintiff contends that Defendant EMC was never entitled to payments submitted by Plaintiff, were never entitled to the benefit of these monies and never applied them to the Note.

56.     In each and every letter, invoice/statement submitted by Defendant EMC to Plaintiff, Defendant EMC has knowingly made the following material misrepresentations: (a) there was an amount due and owing; (b) payment was to be made payable to Defendant EMC and (c) the information contained in the letters, invoices/statements were true when in fact, they were not.

57.     Because Defendants 1st Mariner and EMC omitted material information, have made false and fraudulent statements and otherwise engaged in the above-described fraudulent conduct with the intent to conceal and misrepresent material facts and circumstances regarding each demand for payment submitted to Plaintiff, they should not have been entitled to any monies paid.

58.     There is also an actual case and controversy between Plaintiff and Defendant's MERS, W&A, Wallace and Pettypool as it applies to each of their roles in causing Plaintiff's property to be sold through the use and reliance on fraudulent, false and misleading documents such as the Appointment of Substitute Trustee, Appointment of Successor Trustee, Notice of Trustee Sale and Trustee Deed.

59.     In each and every one of these documents Defendants MERS, W&A, Wallace and Pettypool has knowingly made fraudulent, false and material misrepresentations as if they were true when in fact, they were not.

60.     Accordingly, Plaintiff seeks a judgment declaring Defendants were not entitled to (a) collect payments for any of the charges indentified in the letters, invoices/statements supplied by Defendant EMC; (b) the documents such as the Appointment of Substitute Trustee, Appointment of Successor Trustee, Notice of Trustee Sale and Trustee Deed are void as well as any other relief this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Against Defendants 1st Mariner, EMC, MERS and DOES 1-20
### for Violation of 18 U.S.C. § 1962(c))

61.     Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations.

62.     Defendants 1st Mariner, EMC and MERS are an association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, internet commerce.  Plaintiff contends Does 1-20 are omitted entities that are also association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, internet commerce.  All of these defendants mentioned were formed for the common purpose of facilitating the submission to Plaintiff and others similarly situated, letters, invoices/statements, Assignments, Deeds and other documents as true when in fact, they were not.  The creation and use of Defendant's entities to submit those fraudulent letters, invoices/statements, assignments, deeds and other documents give the appearance of lawful conduct designed to purposely mislead Plaintiff and others similarly situated so that Defendants may unjustly enrich themselves.

63.     Defendants had knowingly conducted and/or participated, directly or indirectly, in the conduct of 1st Mariner, EMC, MERS and Does 1-20's enterprise affairs through a pattern of racketeering activity consisting of repeated violation of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit fraudulent letters, invoices/statements, assignments, deeds and other documents.   These fraudulent letters, invoices/statements, assignments, deeds and other documents identified as Exhibits throughout this Complaint represent a pattern of racketeering activity.

64.     Plaintiff has been injured in his business and property by reason of Defendants above-described conduct in that he has paid and lost in excess of $175,000 based upon the fraudulent letters, invoices/statements, assignments, deeds and other documents used by Defendants.

65.     By reason of its injury, Plaintiff is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
(Against Defendants 1st Mariner, EMC, MERS and DOES 1-20
for Violation of 18 U.S.C. § 1962(d))

66.     Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations including 62 above.

67.     Defendants 1st Mariner, EMC and MERS are an association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, internet commerce.  Plaintiff contends Does 1-20 are omitted entities that are also association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, internet commerce.

68.     The defendants have willfully combines, conspired and agreed to violate 18 U.S.C. § 1962(c) that is to conduct and/or participate, directly or indirectly, in the conduct of the defendants entities enterprise's affairs through a pattern of racketeering activity consisting of repeated violation of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit fraudulent letters, invoices/statements, assignments, deeds and other documents.   These fraudulent letters, invoices/statements, assignments, deeds and other

documents identified as Exhibits throughout this Complaint represent a pattern of racketeering activity.

69.     Each defendant knew of, agreed and acted in furtherance of the overall objective of the conspiracy by facilitation the submission to Plaintiff and others similarly situated, fraudulent letters, invoices/statements, assignments, deeds and other documents.

70.     Plaintiff has been injured in his business and property by reason of Defendants above-described conduct in that he has paid and lost in excess of $175,000 based upon the fraudulent letters, invoices/statements, assignments, deeds and other documents used by Defendants.

71.     By reason of its injury, Plaintiff is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION
### (Against All Defendants for Common Law Fraud)

72.     Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations.

73.     Defendants intentionally and knowingly made false and fraudulent statements of material fact to Plaintiff by submitting, and causing to be submitted, fraudulent letters, invoices/statements, assignments, deeds and other documents used by Defendants.

74.     The false and fraudulent statements of material fact include (a) that Defendant 1st Mariner was the "lender" in the Note and Deed of Trust lending its own money to Plaintiff; (b) Defendant EMC was not entitled to collect payments for any of the charges indentified in the letters, invoices/statements supplied by Defendant EMC; (c) Defendant W&A was not authorized as Trustee in any document to initiate and facilitate a Notice of Trustee Sale; (d) none

of the Defendants were authorized to create, mail and file the documents such as the Appointment of Substitute Trustee, Appointment of Successor Trustee, Notice of Trustee Sale and Trustee Deed. The date, the nature of the misrepresentations and the identity of the parties who made and caused these misrepresentations to be made in each and every claim are identified in the exhibits attached to the Complaint herein.

75.     The defendants made these false and fraudulent statements to induce Plaintiff to pay charges and suffer loss of his property.

76.     In each and every one of the documents relied upon by Plaintiff, Defendants have knowingly made fraudulent, false and material misrepresentations as if they were true when in fact, they were not. Each defendant knew of, agreed and acted in furtherance of the overall objective of the conspiracy by facilitation the submission to Plaintiff and others similarly situated, fraudulent letters, invoices/statements, assignments, deeds and other documents.

77.     Plaintiff has been injured in his business and property by reason of Defendants above-described conduct in that he has paid and lost in excess of $175,000 based upon the fraudulent letters, invoices/statements, assignments, deeds and other documents used by Defendants.

78.     The defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty which entitles Plaintiff to recover punitive damages.

79.     Accordingly, by virtue of the foregoing, Plaintiff is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### FIFTH CAUSE OF ACTION
#### (Against All Defendants for Unjust Enrichment)

80.     Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations.

81.     When Plaintiff entered into a certain agreement with Defendant 1st Mariner and MERS known as a "MERS" Adjustable Rate Note and "MERS" Deed of Trust in the amount of $171,000.00, Plaintiff believe he was conducting an arm's length transaction with only the parties mentioned on the Note and Deed of Trust. Plaintiff executed documents under the reasonable belief that he was conducting a legal transaction between himself and the parties indentified on the Note and Deed of Trust and would be obligated to make payments based upon the defendants' fraudulent misrepresentations and omissions.

82.     Unbeknownst to Plaintiff, Defendant 1st Mariner nor MERS ever lent its own money and at all times material to what Plaintiff believed to be an arm's length transaction, was nothing more than a straw man for an undisclosed party portraying itself to be the "Lender" lending its money to benefactors unknown who use the MERS system. As a result, Defendants 1st Mariner and MERS engaged in the sale of the Note and Deed of Trust and was financially enriched by their omissions and fraudulent misrepresentations.

83.     When Plaintiff received correspondence from Defendant EMC indicating he was to make payments in a monthly amount of approximately $1,260.00 per month, Plaintiff reasonably believed that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations and omissions.

84.     Plaintiff's engagement payments constitute a benefit which Defendant EMC voluntarily accepted.

85.     Defendant's EMC, MERS, W&A, Wallace, Pettypool and Does 1-20 cause Plaintiff's property to be unlawfully sold as a result of fraudulent letters, invoices/statements,

assignments, deeds and other documents to wit the Appointment of Substitute Trustee, Appointment of Successor Trustee, Notice of Trustee Sale and Trustee Deed in the amount of $175,000.00 to the Bank of New York Mellon.

86.     Retention of all the benefits mentioned herein would violate fundamental principles of justice, equity and good conscience.

## SIXTH CAUSE OF ACTION
### (Against Defendant EMC for Violation of 18 U.S.C. § 1343)

87.     Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations.

88.     Defendant used wire communication, including but not limited to internet, email and fax to accomplish their scheme to defraud Plaintiff and the public which they knew or should have known to be fraudulent in violation of 18 U.S.C. § 1343.

89.     In specific, Defendant EMC claimed all payments were to be made directly to Defendant EMC and made available for the payment process its online portal located at www.emcmortgageservicing.com.   Through registration, Plaintiff obtained a Username and Password that allowed Plaintiff to log in, enter his banking information which would in turn deduct funds from his bank account via electronic transmission across state lines into the banking accounts of Defendant EMC.

90.     Because of said actions of Defendant, Plaintiff is entitled to damages.

## SEVENTH CAUSE OF ACTION
### (Against Defendants EMC, W&A, Wallace and Pettypool
### for Violation of 15 U.S.C. § 1692 et. seq.)

91.     Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations.

92.    Defendants improperly misrepresented themselves to Plaintiffs to be the party in interest with legal authority to collect on debts secured by a deed when in fact they are not authorized to collect debts on behalf of the true party in interest in violation of 15 U.S.C. § 1692 *et seq.*.

93.    In specific, Defendants via U.S. Mail, submitted or caused to be submitted fraudulent letters, invoices/statements, assignments, deeds and other documents to further their scheme to defraud Plaintiff and the public which they knew or should have known to be fraudulent.

94.    Because of said actions of Defendant, Plaintiff is entitled to damages.

### EIGHTH CAUSE OF ACTION
#### (Against All Defendant for Punitive Damages)

95.    Plaintiff incorporates by reference, as though fully set forth herein, the preceding allegations.

96.    Defendants are banking institutions, mortgage servicers and licensed attorneys who are held to a higher standard of honesty and integrity.

97.    Defendants' frauds and other misconduct upon Plaintiff, the public and the judiciary for their financial benefit are reprehensible, outrageous and demands serious punitive damages to deter Defendants from further harming the public and deceiving the judiciary.

98.    Defendants conduct described here was done with conscious and intentional disregard of Plaintiff and the public's rights and with the intent to injure, vex and annoy and take from the Plaintiff and public without due process of law and the same constituted oppression, fraud and/or malice, entitling Plaintiff to an award of punitive damages in the amount appropriate to punish or set an example of Defendants and to deter them from such conduct.

WHEREFORE, Plaintiff demands that a Judgment be entered in its favor:

i.     on his First Cause of Action, declaring Defendants were not entitled to (a) collect payments for any of the charges indentified in the letters, invoices/statements supplied by Defendant EMC; (b) the documents such as the Appointment of Substitute Trustee, Appointment of Successor Trustee, Notice of Trustee Sale and Trustee Deed are void;

ii.     on his Second Cause of Action against Defendants 1st Mariner, EMC, MERS and DOES 1-20 for compensatory damages in an amount to be determined at trial, together with treble damages, costs, and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c) plus interest;

iii.     on his Third Cause of Action against Defendants 1st Mariner, EMC, MERS and DOES 1-20 for compensatory damages in an amount to be determined at trial, together with treble damages, costs, and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c) plus interest;

iv.     on its Fourth Cause of Action against all Defendants, for compensatory and punitive damages in an amount to be determined at trial plus interest;

v.     on its Fifth Cause of Action against all Defendants, for the return of all monies which the Defendants have wrongfully obtained plus interest;

vi.     on his Sixth Cause of Action against Defendant EMC, for compensatory and punitive damages in an amount to be determined at trial plus interest;

vii.     on his Seventh Cause of Action against Defendant EMC, W&A, Wallace and Pettypool, for compensatory and punitive damages in an amount to be determined at trial plus interest;

viii.   on his Eighth Cause of Action against all Defendants, for punitive damages in an amount to be determined at trial; and

ix.   awarding Plaintiff its costs including reasonable attorney's fees, and any other relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury.

Dated: June 10, 2011
Cleveland, Tennessee

By: _____
Dmitry A. Dimov, *Pro Se*
131 Luke Road NE
Cleveland, TN 37323
Tel: 941-549-0570
Fax: 941-423-7301