UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DMITRIY A. DIMOV, ) <br> ) <br>     *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> EMC MORTGAGE CORPORATION, ) <br> 1ST MARINER BANK, MORTGAGE ) <br> ELECTRONIC REGISTRATION SYSTEMS, ) <br> INC., WILSON & ASSOCIATES, PLLC, ) <br> SHELLIE WALLACE, an individual, ) <br> TERSA PETTYPOOL, an individual, ) <br> and DOES 1-20, ) <br> ) <br>     *Defendants*. ) | Case No. 1:11-CV-160 <br><br> Chief Judge Curtis L. Collier |

## **MEMORANDUM**

Before the Court are three separate motions to dismiss filed by the following defendants: EMC Mortgage Corporation ("EMC") and Mortgage Electronic Registration Systems ("MERS") (Court File No. 7); Wilson & Associates, PLLC, Shellie Wallace, and Tersa Pettypool (collectively, the "Wilson Defendants") (Court File No. 11); and 1st Mariner Bank ("1st Mariner") (Court File No. 14). Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Pro se* Plaintiff Dmitriy A. Dimov ("Plaintiff") did not file a response to Defendants' motions to dismiss.

For the following reasons, the Court will **GRANT** Defendants' motions to dismiss (Court File Nos. 7, 11, and 14) and **DISMISS** this action.

**I.    FACTS**

In December 2005, Plaintiff signed a promissory note with 1st Mariner on real property

located in Cleveland Tennessee (Court File No. 1 at 4).[1] The promissory note identified 1st Mariner as "Lender" and the deed of trust identified MERS as the "nominee for Lender" (*id.*). Plaintiff agreed to pay 1st Mariner $171,000 in return for the loan received (*id.*). He alleges 1st Mariner engaged in fraud and material misrepresentation because it never lent its own money and falsely led Plaintiff to believe he was engaged in an "arms length transaction" when, in fact, 1st Mariner was merely a "straw man" for an undisclosed party (*id.* at 5).

Plaintiff further alleges EMC was never mentioned in the note or deed of trust, but the company still sent him letters, invoices, and statements through U.S. mail seeking payments in the amount of $1,264.00 from January 2006 through July 2009 (*id.* at 6). According to Plaintiff, this amount differed from the agreed upon amount of $1,123,35 written in Plaintiff's promissory note (*id.*). He received over forty-one such statements and ended up paying approximately $51,824.00 to EMC (*id.*). He contends EMC was not authorized to receive payments and was engaged in a fraudulent scheme that resulted in the unjust enrichment of EMC and other co-conspirators (*id.* at 7).

On or about May 17, 2007, Plaintiff alleges MERS was responsible for the filing of an Appointment of Substitute Trustee that contained false and misleading information (*id.* at 8). Specifically, he notes the document falsely stated that Equi Title was the Trustee and that MERS was the "owner and holder of said indebtedness" (*id.*). Plaintiff also alleges EMC filed an Appointment of Successor Trustee that contained false and misleading information (*id.* at 9). Among other things, Plaintiff notes the Appointment of Successor Trustee named Shellie Wallace as Trustee

---

[1] The Court summarizes the facts provided in the Complaint in the light most favorable to Plaintiff.

and Tersa Pettypool as Co-Trustee (*id.* at 10).[2] He claims this is evidence of fraudulent behavior because he received two letters from Ms. Wallace on Wilson & Associates, PLLC letterhead prior to that date--one letter giving Plaintiff thirty days to dispute the validity of his mortgage debt and another that included a Notice of Trustee Sale (*id.* at 9-10). Plaintiff claims he responded and confirmed the debt was in dispute (*id.* at 10). Plaintiff admits Ms. Pettypool sent him a letter acknowledging receipt of his response, but Plaintiff claims the Wilson Defendants, acting on behalf of EMC, failed to address his request for verification and validation of his debt (*id.*). Plaintiff alleges that, as a result of the many fraudulent actions of Defendants acting in concert, he lost his house due to foreclosure and it was sold on July 27, 2009 (*id.* at 10-12).

Plaintiff seeks relief from this Court by asserting eight causes of action. In Count One, Plaintiff seeks a declaratory judgment against all Defendants pursuant to 28 U.S.C. § 2201 that "Defendants were not entitled to (a) collect payments for any of the charges identified in the letters, invoices/statements supplied by Defendant EMC; [and] (b) the documents such as the Appointment of Substitute Trustee, Appointment of Successor Trustee, Notice of Trustee Sale and Trustee Deed are void" (*id.* ¶¶ 52-60). In Counts Two and Three, Plaintiff contends 1st Mariner, EMC, MERS, and Does 1-20 violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.*, specifically sections 1962(c) and (d). In Count Four, Plaintiff asserts a common law fraud claim against all Defendants. In Count Five, Plaintiff asserts a claim of unjust enrichment against all Defendants. In Count Six, Plaintiff alleges all Defendants engaged in wire fraud in violation of 18 U.S.C. § 1343. In Count Seven, Plaintiff claims EMC and the Wilson

---

[2] Ms. Wallace is an attorney and partner of Wilson & Associates, PLLC and Ms. Pettypool is a former attorney at Wilson & Associates, PLLC (Court File No. 12).

Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Finally, in Count Eight, Plaintiff brings a punitive damages claim against all Defendants.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.  DISCUSSION

As a preliminary matter, the Wilson Defendants and 1st Mariner assert that this action should be barred under the doctrine of *res judicata*.[3] The doctrine of *res judicata* encompasses two preclusive concepts: issue preclusion and claim preclusion.[4] *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1,(1984); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 n.5 (6th Cir. 2006). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* In contrast, "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.* The Court will address each concept in turn.

### A. Issue Preclusion

Four requirements must be satisfied before issue preclusion can foreclose a party from bringing a particular claim: "(1) the precise issue must have been raised and actually litigated in the

---

[3] Although EMC, MERS, and the unidentified Defendants did not raise this argument as an affirmative defense as did the Wilson Defendants and 1st Mariner, a district court can raise the issue *sua sponte*. *See Holloway Constr. Co. v. U.S. Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989). Here, this Court raises the issue *sua sponte* with respect to EMC, MERS, and Does 1-20 because addressing this matter as it pertains to all Defendants will insure the finality of this Court's previous decision, conserve judicial resources, and prevent the aforementioned parties from having to litigate multiple lawsuits. *See Hanger Prosthetics & Orthotics E., Inc. v. Henson*, 299 F. App'x 547, 553 (6th Cir. 2008).

[4] Although the parties utilize the term *res judicata* throughout their briefs, this term is generally disfavored because it can lead to confusion. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (noting that, in some contexts, the term *res judicata* is treated as being "virtually synonymous" with "claim preclusion," to the exclusion of "issue preclusion"); *Barnes v. McDowell*, 848 F.2d 725, 728 n.5 (6th Cir. 1988) (expressing the hope that future litigants would refrain from using the terms *res judicata* and "collateral estoppel" when they are actually referring to the concepts of "claim preclusion" and "issue preclusion," respectively, in the interest of "precision and clarity"). Adopting this view, the Court will discuss Defendants' arguments using the terms "claim preclusion" and "issue preclusion."

5

prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009) (citing *N.A.A.C.P. v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)).

This Court concludes Plaintiff is barred under the doctrine of issue preclusion from relitigating his civil RICO claims. In 2009, Plaintiff brought a suit against Defendants EMC, 1st Mariner, CitiFinancial, Equi Title, Inc., and "John Does & Jane Does 1-20 including all similarly situated as predicate actors" before this very Court (*Dimov v. EMC Mortgage Corp., et al*, 1:09-cv-211). Pursuant to Fed. R. Civ. P. 12(b)(6), this Court dismissed Plaintiff's claims, which were generously construed to allege violations of the Clayton Act and the Civil RICO Act, including provisions (c) and (d) of 18 U.S.C. § 1962. Plaintiff now brings a second action against EMC, 1st Mariner, Does 1-20, and four new but related parties alleging civil RICO violations along with several new claims. Applying the elements of issue preclusion, Counts Two and Three of the instant case, which allege violations of 18 U.S.C. §§ 1962(c) and (d), have already been raised and litigated in a prior action. Moreover, this Court's decision to dismiss Plaintiff's claims in the previous case was a final judgment on the merits, and this Court's determination with respect to Plaintiff's civil RICO claims was a necessary part of that decision. Finally, even though Plaintiff has proceeded *pro se* in both actions, there is no evidence that he was deprived of an opportunity to fully and fairly litigate his case. Hence, this Court concludes Plaintiff's civil RICO claims should be barred under the doctrine of issue preclusion.

### B. Claim Preclusion

To establish that a claim should be foreclosed under the doctrine of claim preclusion, there must be "(1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action. *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999) (citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)). The first element is met because, as discussed earlier, this Court's decision to dismiss Plaintiff's case in 2009 was a final decision on the merits.

The second element is also met because the current action involves identical parties and parties in privity with the defendants in the first action. Plaintiff, EMC, 1st Mariner, and the unidentified Defendants (here, "Does 1-20") were all parties to the original action. The Wilson Defendants and MERS, on the other hand, were not parties to the original action but they satisfy the privity requirement in element two. "Privity in this sense means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders v. Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992) (citing *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979 (5th Cir.1990)). The Wilson Defendants served as the successor trustee to one of the named defendants in the original action and therefore satisfy the privity requirement. Similarly, MERS, acting as the "nominee" or agent for the lender who is a named defendant, would also meet the privity requirement. *See, e.g., Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV-11-156-HZ, 2011 WL 3476648, at *10 (D. Oregon Aug. 8, 2011) (concluding MERS was in privity with the Federal Home Loan Mortgage Company, also known as FreddieMac, for purposes of claim preclusion because its interests were represented by FreddieMac in the

7

previous action).

Finally, the last two elements of claim preclusion are satisfied in this case. In addition to showing that there are claims in this action that should have been litigated in a previous action, there must also be an "identity of the causes of action." *Wilkins*, 183 F.3d at 532. A party can demonstrate that there has been an "identity of the causes of action" if "the claims arose out of the same transaction or series of transactions, or [if] the claims arose out of the same core of operative facts." *Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002). Here, this Court sees no reason that Plaintiff could not have raised his new claims in the prior action. This is particularly true given that each claim arises from the same "series of transactions" and "out of the same core of operative facts" referenced in the first case. *See id*. In both the 2009 action and the present action, Plaintiff alleges he signed a promissory note with EMC on property located in Cleveland, Tennessee, and that, following a series of fraudulent actions taken by various Defendants acting in concert between 2005 and 2009, his property was sold due to foreclosure. Plaintiff has raised new legal theories (that is, common-law fraud, unjust enrichment, wire fraud, and violations of the Fair Debt Collection Practices Act) and seeks new forms of relief (that is, a declaratory judgment and punitive damages), but this action is merely an attempt to relitigate the same suit and it involves the same facts and transactions. Although this Court recognizes Plaintiff may be dissatisfied with the outcome of his first action, our judicial system does not allow a plaintiff to get a "second bite at the apple." *See Thomas v. Miller*, 329 F. App'x 623, 628 (6th Cir. 2009). Accordingly, Plaintiff's remaining claims are also barred.[5]

---

[5] In addition to their arguments on the merits of each claim, several Defendants noted that the FDCPA claim is time-barred because the applicable statute of limitations has expired and that Plaintiff cannot bring a wire fraud claim under the criminal statute 18 U.S.C. § 1343 because

**IV. CONCLUSION**

Dismissal of this case is proper because Plaintiff's claims are barred under the doctrines of issue preclusion and claim preclusion. Accordingly, the Court will **GRANT** the three motions to dismiss filed by Defendants (Court File Nos. 7, 11, and 14) and **DISMISS** this case.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

Congress did not create a private right of action. Having considered the relevant law, this Court agrees with Defendants' arguments with respect to these two claims. With that said, because the Court concludes Plaintiff's claims are precluded under the doctrines of issue preclusion and claim preclusion, there is no need for the Court to discuss these or any additional issues.